## The Town of Barton *v.* The Town of Irasburgh.

### *Pauper. Domicil.*

M., having no family and no property except his clothes and two axes, and no particular place which he called his home, worked at different places in B. from 1850 to 1859, with the exception that from July, 1852, to the spring of 1853, and from January, 1855, to the following spring, he worked in three

other towns, to which he took all his property. His engagements to labor, both in B. and elsewhere, were not made for any particular period, but his only purpose seemed to be to stay as long as he could, wherever he could find employment ; *Held*, that the fact that on each of these occasions of leaving B., he intended to return to that place to seek a home and employment there after the expiration of his particular term of service elsewhere, was not sufficient to prevent such absences from interrupting his legal residence in B.

APPEAL from an order of removal of cne David Mann, a pauper. Plea, that the pauper was unduly removed, and trial by jury at the June Term, 1860,—POLAND, J., presiding.

It was conceded by the defendants that the pauper's settlement was in Irasburgh, unless he had lost it by gaining one in Barton, by a residence of seven consecutive years in Barton between 1850 and 1859.

The defendants introduced evidence tending to prove that the pauper went to Barton in the spring of 1850, and made his home there with his brother, a resident of that town ; that he kept his clothes and had his washing done there, and whenever out of employment returned to his brother's house as his home, until the latter's death in 1856, after which time he continued to work at different places and have his home in Barton until 1859, when the order of removal was made.

The plaintiffs introduced evidence tending to prove that the pauper, during the period in question, did not have a home at his brother's in Barton, and never kept his clothes nor had his washing or mending done there.

The evidence introduced by the plaintiffs further tended to prove that the pauper was always poor ; that he had but a very few clothes, and no property except two axes ; that he was intemperate, ate opium, and was subject to fits, which made his presence very disagreeable ; that on this account it was very difficult for him to obtain employment or any place to live ; that he travelled about, carrying his few spare clothes with him, and his two axes, and that he had no home or fixed abode whatever, except where he found employment from time to time ; that in July, 1852, he went to work for one Brown, in Irasburgh, and remained with him until the November following, when he went to work for one Smith, in Sheffield, and worked for him until the spring of 1853 ;

that from January, 1855, till the following spring he worked in Brighton; that while at work in these places he had all his clothes with him and had his washing and mending done where he worked, and that there was then no place in Barton which he called his home; that his engagements to labor were not made for any particular period, but that he always seemed to desire to stay as long as he could wherever he could find employment; and that, with the exception of these periods of labor in Irasburgh, Sheffield and Brighton, he worked in Barton from 1850 to 1859.

The defendants requested the court to charge the jury that even if the pauper had no particular place in Barton, where he kept his effects and which he called his home, still, if, when he went elsewhere to work, he intended, on the completion of his engagements, to return to Barton to live, then his legal residence continued in Barton, and was not interrupted by such absences.

But the court declined so to charge the jury, but instructed them that if, when so absent from Barton, the pauper had his effects with him, and no particular place or home to which he intended to return, the fact that he entertained a purpose to return to Barton to seek a home and employment there, at the completion of the particular term of service upon which he was then at work, would not have the effect to continue his residence in that town while thus absent from it.

To this charge the defendants excepted, and the jury returned a verdict that the pauper was duly removed.

*J. H. Prentiss* and *Cooper & Bartlett*, for the defendants.

*John P. Sartle*, for the plaintiffs.

ALDIS, J. In determining the question of residence, intention is an important element. It is especially so where the recent removal of the party from his ordinary home and his actual commorancy elsewhere are not of that decisive character that settles the question of residence without reference to intention. So where a single person, not a householder, and with few effects, changes his residence, it is obvious that intention becomes then especially important. But intention is not the only element in

11

such  cases,  and  is  itself  modified  by  the  character,  habits  and
business  of  the  party,  and  the  character  of  his  old  home,  and  of  his
new  residence.    Again,  the  *intention,*  the  *animus  revertendi,*  must
be  a  *present,  fixed*  and  *continuous*  intention.    If  the  intention
of  returning  to  the  former  home  to  reside  is  once  abandoned,  the
old  residence  is  interrupted,  and  a  subsequent  revival  of  the
intention  is  inoperative  to  restore  the  residence.    It  is  not  a  mere
feeling  or  sentiment,  a  desire,  the  yearning  of  the  untravelled
heath,  some  ultimate  purpose  not  having  a  present  fixed  object.
It  must  not  be  a  remote  and  secret  intention  over  which  the  pres-
ent  intention  of  residence  at  the  new  place  dominates.    Nor  must
the  new  residence  have  all  the  qualities  and  *indicia*  of  the  old
with  a  present  intention  to  remain  in  the  new  place  for  an
indefinite  time,  or  for  such  a  length  of  time  as  he  can  find  occu-
pation ;  for  such  residence  is  not  distinguishable  from  the  old,  and
reduces  the  *animus  revertendi*  to  mere  desire  and  sentiment.

Again,  in  considering  the  question  of  intention,  it  is  always
important  to  consider  whether  the  party  has  anything  to  return  to.

A  householder  who  has  a  family  and  a  house  to  return  to,  a
single  person  who  has  an  accustomed  home,  or  personal  effects
and  worldly  goods  to  go  back  to,  may  well  be  supposed  to  have
the  intention  of  returning.    Hence  in  many  cases  the  place
where  one  keeps  his  effects,  his  chest,  etc.,  is  said  to  be  his  home.
If  he  take  his  all  with  him  and  leaves  no  home  behind  him,  then
he  may  be  thought  more  reasonably  to  carry  his  home  with  him.
His  places  of  residence  have  no  fixed  purpose  and  are  easily
moulded  to  any  views  which  business,  profit  or  pleasure  may  sug-
gest.    The  intention  where  to  reside  may  fluctuate  from  day  to
day.

In  the  case  at  bar  the  party,  a  single  person,  had  lived  and
worked  chiefly  in  Barton,  but  he  went  to  Irasburgh  and  carried
all  his  effects  with  him.    He  had  no  home  anywhere,  not  even  in
Barton.    He  had  nothing  in  Barton  to  return  to.    His  main
object  in  life  would  seem  to  have  been  to  find  occupation,  to
obtain  a  place  where  he  might  be  allowed  to  work  and  stay,  and
even  this  poor  privilege  was  frequently  denied  him.    The  bill  of
exceptions  states  that  on  account  of  his  habits  of  intemperance,
and  his  liability  to  fits,  he  found  it  very  difficult  to  obtain  employ-

ment or any place to live, and that he seemed to desire to stay
as long as he could wherever he could find employmont, and this
applied to his stay at the places where he got work in Irasburgh,
Sheffield and Brighton, as well as in Barton.   His residence in
Barton had nothing to distinguish it or give it the character of a
home any more than his residence in Irasburgh and Sheffield.

The intention or purpose to return to Barton, was not to any
place in particular, nor was there any spot in Barton that even
he considered home, nor was his intent a present and continu-
ing intention, which made his absences merely temporary, and
always subject to the intention of return to Barton to reside;
but on the contrary, the intention to return was inferior to, and
overruled by, the intention of getting work and a place to live,
and so long as these could be obtained, the intention of going
back to Barton was inoperative and indefinitely delayed.   When
while absent from Barton he could find no place to stay else-
where, he went back to Barton.   Now such intention cannot be
properly called an intention of returning to reside ; it is rather,
as most properly expressed in the charge of the county court,
" the entertaining of a purpose to return to the town to seek a
home and employment there."   Even this indefinite purpose par-
took of his own vagrant condition, seems to have had no settled
home in his mind, but to have lodged in it as travellers do at a
house of entertainment.

He would intend to return to Barton when he could not stop
anywhere else.

The charge of the court is fully sustained by the decisions of
our own State.   Thus in *Hartford* v. *Hartland,* 19 Vt. 396, the
pauper with his family and effects moved from Hartford to Leb-
anon, N. H , in order to learn the trade of shoemaking, staid
three or four months and then moved back to Hartford.   It was
claimed that his removal was for a temporary purpose, and the
intent to return remained.   Royce, J., says that as he removed
all his family and effects to Lebanon, though he may have con-
templated a return to Hartford at some future but uncertain time,
still his residence at Hartford was interrupted.   In the present
case the absence from Barton was from July, 1852, till the fol-
lowing spring ; his stay was not for a fixed term, indicating an

intent to return at its close to Barton, but was indefinite. He seemed to desire to stay away as long as he could find employment. *Royalton* v. *Bethel*, 10 Vt. 22 ; *Middlebury* v. *Waltham*, 6 Vt. 200 ; *Jamaica* v. *Townsend*, 19 Vt. 267. In the last case the whole tenor of Judge REDFIELD'S opinion is to show that a mental purpose of return at a future indefinite time, when there is no particular home to return to, is not the *animus revertendi* that determines residence.

The same principle has been recognized in the decisions in England and in other States. In the celebrated case of *Bruce* v. *Bruce*, 2 Bos. & Pul., the remark of the chancellor refers to the distinction in striking language : " Major Bruce left England and went to India, and lived there sixteen years and died. *He meant to return to his native country*, it is said, and let it be granted. He meant then to change his domicil, but died before actually changing it."

The same principle is recognized in *Erennes* v. *Smith*, 14 Howard 423, by the supreme court of the United States.

Without further reference to authorities, we conclude that the charge of the court was correct.

Judgment affirmed.