INHABITANTS OF WILBRAHAM *vs.* INHABITANTS OF LUDLOW.

A person legally capable of choosing or changing his domicil, who is residing in a city or town in this Commonwealth with the purpose of there remaining for an indefinite time, and without retaining and keeping up any intention to return to his former home in another city or town in this Commonwealth, has his domicil in the place of his actual residence.

A person legally capable of choosing or changing his domicil, who abandons his home and thenceforth wanders from town to town, working as a day laborer, "with no purpose in view, and with no opinions, desires or intentions, in relation to residence, except to have a home wherever he works," ceases to have a continuing domicil, for the purpose of acquiring a settlement, in the town where the home is which he so abandons.

.CONTRACT to recover money paid by the plaintiffs for the support of Daniel A. Warner as an insane pauper in the hospital in Northampton. Trial in the superior court, before *Lord, J.,* who allowed the following bill of exceptions:

The only question in dispute was as to the settlement of the pauper. The plaintiffs admitted that he once had a settlement with them, but contended that he acquired a new settlement with the defendants under the Rev. Sts. *c.* 45, § 1, *cl.* 5, 12. "It appeared from the evidence that he was taxed in Ludlow a highway tax in 1850, and was taxed as a resident of Ludlow a poll tax in 1851, 1852, 1853 and 1854; that on March 28, 1855, he purchased and took a deed in fee simple of a dwelling-house and about one acre of land in Ludlow, and on March 31 purchased and took a deed of about thirty acres more of land in

Ludlow; that for the years 1855, 1856 and 1857 he was taxed upon his poll and estate as a resident of Ludlow, and for the years 1858, 1859 and 1860 was taxed upon his estate in Ludlow as a nonresident, and, during all these years, from 1855 to 1861 inclusive, the property taxed was set in the valuation of estates at more than two hundred dollars; that in May 1855 he married Caroline Fuller, of Ludlow, and went immediately thereafter to live in the house purchased by him as aforesaid, and lived there until June 1857; that his wife left him in February 1857, obtained a divorce from bed and board in April 1857, and by a decree of the court all personal property which came by the marriage was given to the wife, and on May 2, 1857, she caused all the furniture to be removed from his house and carried away, except his trunk, containing some few articles, which have never been removed; that he worked for one Plumly in in Ludlow from May to August, 1857, and, taking a bundle of clothes, went to his brother's house in Wilbraham, and after that went to work as a day laborer, and worked about in the towns of Wilbraham, Springfield and Ludlow, until October 1861, when he went to Horace Clark, one of the selectmen of Wilbraham, for assistance, and remained there some two years or more, and until he was committed to the hospital, said Clark having been appointed his guardian just after October 1861; that in June 1857 he rented his house in Ludlow, but in renting it said he wanted one room to which he could go if he pleased, and it was thus occupied by tenants until April 1860, when it was sold for the payment of the taxes of 1858 and 1859. It did not appear that he spent a night at his house in Ludlow after June 1857. It appeared that he never occupied said room.

"The judge stated that he should rule and instruct the jury as follows: If after his house was leased in 1857 he left Ludlow and went to his brother's house in Wilbraham, and from that time forward he worked in different towns and for different persons, as he could find or was willing to accept employment, wandering about from town to town and place to place, with no purpose in view, and with no opinions, desires or intentions in relation to residence, except to have a home wherever he

worked, up to the year 1861, when he went into the family of Horace Clark, of Wilbraham, to remain permanently, and did so remain until he was committed to the hospita. at Northampton, this kind of life would not continue his residence in Ludlow for the purpose of acquiring a settlement, after he left in 1857, although during the four years he worked two or three times for some persons in Ludlow.

" Under these circumstances, the counsel for the plaintiffs declined to argue the cause to the jury, and excepted to the foregoing rulings and instructions. A verdict was thereupon taken for the defendants, the counsel for the plaintiffs stating that under such ruling they did not claim a verdict."

*H. Morris & C. A. Winchester*, for the plaintiffs. 1. Under the Rev. Sts. *c.* 45, § 1, *cl.* 5, (Gen. Sts. *c.* 69, § 1, *cl.* 5,) the taxes assessed on the pauper's estate, and paid from 1855 to 1861 inclusive, were sufficient to give him a settlement in Ludlow, if in the sense of the statute " he dwelt and had his home " there during that period. So under the Rev. Sts. *c.* 45, § 1, *cl.* 12, the taxes assessed and paid between 1851 and 1861 inclusive were sufficient to give him a settlement in Ludlow, if in the sense of that statute he " resided " in that town during those ten years. For the purposes of these statutes, the pauper resided and dwelt and had his home in Ludlow, from 1850 till October 1861, when he went to the house of Clark in Wilbraham. That he resided in Ludlow from 1850 to 1857 inclusive, there can be no reasonable doubt. He was taxed there all that time as a resident; was married there; and lived there in his own house with his wife more than two years; and, his residence being so fixed, the presumption was that it continued until a residence elsewhere was proved. *Chicopee* v. *Whately*, 6 Allen, 508.

2. Leaving Ludlow, and wandering about from town to town, with no purpose in view, and with no opinions, desires or intentions in relation to his residence, would not destroy the continuity of his residence in Ludlow, although he worked there but a few times during those years. Upon the evidence, the jury should have been instructed that, if the residence of the pauper

was once fixed in Ludlow, the presumption was that it continued there till the change of residence was proved; that he must have had a residence in some town; that he could have but one, and could lose one already acquired only by acquiring another; that, in order to have lost his residence in Ludlow, he must have gone to some other town, with a fixed purpose to remain, and not to return to Ludlow again to reside; that merely leaving Ludlow with an intention not to return, but without taking up his residence in some other place, would not break up his residence in Ludlow; that the fact and intent must concur: that he must not only have intended to leave, but must actually have left, and not only have intended to reside elsewhere, but have had some definite place where he intended to reside, and there have resided. *Bulkley* v. *Williamstown*, 3 Gray, 493. *Holmes* v. *Greene*, 7 Gray, 299. *Worcester* v. *Wilbraham*, 13 Gray, 586. *Littlefield* v. *Brooks*, 50 Maine, 477. The evidence would have warranted the jury in finding for the plaintiffs under proper instructions. The question of settlement is one to be determined by the facts and circumstances of each particular case, and peculiarly within the province of a jury. *Fitchburg* v. *Winchendon*, 4 Cush. 190.

*M. P. Knowlton*, for the defendants.

FOSTER, J. The question in the present case was, whether the pauper, whose settlement was once in the plaintiff town of Wilbraham, had acquired a new settlement in Ludlow. The burden of proof to establish this was on the plaintiffs. After the presiding judge had announced the rule of law which he deemed to govern the case, and the instructions which he proposed to give to the jury, the plaintiffs declined to argue the case, submitted to a verdict for the defendants, and alleged exceptions. Under these circumstances, the only question open for revision is the correctness of the rulings. The evidence is not for the court to pass upon, and is reported only to make the instructions intelligible and enable us to judge better whether they were pertinent and accurate.

The pauper leased his house in Ludlow in June 1857, and never lived in it again. He remained in that town, working as

a laborer, until August in that year. He then went to his brother's house in Wilbraham, and afterwards worked about, as a day laborer, in the towns of Wilbraham, Springfield, and Ludlow, till October 1861, after which he remained in Wilbraham in the family of Horace Clark, who was about that time appointed his guardian, until he was committed as an insane pauper to the hospital at Northampton. The proposition to be maintained by the plaintiffs was, that after August 1857 he continued to reside in Ludlow within the meaning of the pauper laws; so that a settlement in that town could be subsequently acquired. There was certainly no actual continuance of his former home in that town; it was broken up and he had abandoned it, apparently without any intention to return there to live. But the argument for the plaintiffs is, that the pauper's domicil remained in Ludlow until he acquired a new one in some other town, and that, while absent in fact, he continued to live there in contemplation of law, and by such constructive residence the prescribed period for acquiring a settlement was completed.

Assuming that this view of the law is correct, and that domicil and residence are identical under the pauper laws, we are nevertheless of opinion that the rule of law stated to the jury was correct. If, from the time the pauper left Ludlow in August 1857, he had " no opinions, desires or intentions in relation to residence, except to have a home wherever he worked," then he did have in each successive town where he lived as a laborer a home and domicil so long as he remained there. It must be borne in mind that this was the case of one who had abandoned his former dwelling-place, either with no intention of return, or at the most with such vague, indefinite and remote purposes in this respect that they would not prevent him from readily acquiring a new domicil wherever he might go. The person was a day laborer without family, separated by judicial decree from his wife. Such a man, so situated, when he is laboring in one town with no other intention as to residence except to have a home wherever he works, may well be deemed to live there with the purpose of remaining for an indefinite period of time, and

thus to have there all the home he has anywhere, as much of a domicil as such a wanderer can have. At least it was competent for the jury to come to that conclusion; and the instructions under which they did so were unobjectionable.

It is unnecessary to attempt a precise definition of the term domicil, as to which that eminent English judge, Dr. Lushington, has said that, "although so many powerful minds have been applied to the question, there is no universally agreed definition of the term, no agreed enumeration of the ingredients which constitute domicil." *Maltass* v. *Maltass*, 1 Rob. Eccl. 74. Story Confl. Laws, *c.* 3. Our own adjudged cases sufficiently establish the rule that one who is residing in a place with the purpose of remaining there for an indefinite period of time, and without retaining and keeping up any *animus revertendi*, or intention to return, to the former home which he has abandoned, will have his domicil in the place of his actual residence *Sleeper* v. *Paige*, 15 Gray, 349. *Whitney* v. *Sherborn*, 12 Allen 111. Where the question is one of national domicil, this state ment may not be correct; for such a condition of facts might not manifest an intention of expatriation. But it is accurate enough for cases like the present, which relate to a change of domicil from one place to another within the same Common wealth. *Exceptions overruled.*