North Yarmouth *v*. West Gardiner.

———————◆———————

NORTH YARMOUTH *vs.* WEST GARDINER.

*Pauper. Residence—acquiring and abandoning.*

When a person leaves his place of residence with everything he has, without any intention as to returning, he has, under the pauper statute, abandoned it, whether he has established another or not.

And the interruption of a residence does not depend, in any degree, upon the fact whether he did or did not return.

A residence once established may be abandoned without having acquired another.

ON EXCEPTIONS.

An action for pauper supplies.

The only question in dispute was whether the pauper, John Johnson, had resided in West Gardiner for five successive years.

There was evidence tending to show that the pauper was born in Monmouth (where his father had a settlement and died about 1808), he being then about sixteen years of age; that he never acquired a new settlement in any other town, unless in West Gardiner; that his place of residence in West Gardiner was at one Davis's, where he was " off and on " from 1832 to 1853, not stopping at any one time more than four years; that he could neither read or write or reckon money; that he never brought any clothing

to Davis's or carried any away; that Davis never paid him anything for his labor except victuals, clothing, and lodging; that he would leave without notice, and return without invitation.

The defendants contended that if the pauper had once established his home in West Gardiner, and had commenced residing there, and then left the town, without any intention to return, his residence would be thereby interrupted; and further, that if the pauper had not sufficient intelligence, when he left, to form and retain the intention of returning, and making Davis's his future residence, his residence would be thereby interrupted. Upon this point the presiding justice instructed the jury, that if the pauper left with an intention not to return, it would be a clear case of interruption; that if he left with a formed intention to return, and did, in fact, return in pursuance of such intention, his absence would not be an interruption; that if he left without any intention as to whether he would or would not return, or with only an indefinite and half-formed purpose not to return, but did, in fact, return without having established a residence elsewhere, his absence would not constitute an interruption of his residence in West Gardiner.

The verdict was for the plaintiffs, and the defendants alleged exceptions.

*L. Clay,* for the defendants.

*Davis & Drummond,* for the plaintiffs.

An abandonment of a residence, with an intention not to return, will interrupt a settlement. *Exeter* v. *Brighton,* 15 Maine, 58.

A residence or home once fixed is deemed to continue until actually changed. *Brewer* v. *Linneus,* 36 Maine, 428.

To break up a residence there must be a departure with an absolute affirmative intention to abandon; and not a departure without any intention whatever. *Warren* v. *Thomaston,* 43 Maine, 406; *Bangor* v. *Brewer,* 47 Maine, 97, 101.

The instruction, proving the subject of exceptions in this case, is almost in the language of the opinion in *Worcester* v. *Wilbraham,* 13 Gray, 586, 589, which case with *Warren* v. *Thomaston,* are approvingly cited in *Lee* v. *Lenox,* 15 Gray, 496.

*Wilbraham* v. *Ludlow*, 99 Mass. 587, is not in conflict with the last cases cited, the opinion being based upon the fact found, that the pauper wandered from town to town with no purpose in view, and with no desires or intentions in relation to residence, except to have a home wherever he worked. In such case the pauper had a home wherever he worked, so long as he remained there.

All of the cases concur in holding that there must be a concurrence of fact and intention to establish a residence or break up one once formed. *Mead* v. *Boxborough*, 11 Cush. 362 ; *Holmes* v. *Greene*, 7 Gray, 229 ; *Carnoe* v. *Freetown*, 9 Gray, 357 ; *Whitney* v. *Sherborne*, 12 Allen, 111.

If there is no proof of intention to abandon, either in fact or by inference from the circumstances, one of the essential elements of abandonment is wanting.

It amounts to this ; the pauper leaves, is absent awhile, and returns. Nothing is known of his intention. There is clearly no change.

All the cases can be reconciled by keeping in view the distinction between knowing the actual intention and inferring it from the circumstances.

The instruction requires the jury to find that the pauper never formed an intention to abandon his residence or to establish one elsewhere ; all the authorities concur in holding that under such circumstances the residence is not abandoned, the actual intention being gathered from the whole evidence.

DANFORTH, J. The instruction excepted to and relied upon is as follows : "If he left without any intention as to whether he would or would not return, or with only an indefinite and half-formed purpose not to return, but did, in fact, return without having established a residence elsewhere, his absence would not constitute an interruption of his residence in West Gardiner."

This instruction assumes the fact that the pauper had established a residence in West Gardiner, and that he had left there without an intention to return. The proposition, then, is, that if under this

state of facts he does return without having established a residence elsewhere, his home in West Gardiner will not be interrupted by his absence.   Here is no question as to the  proper  inference to be drawn from the testimony, or from the  proved acts of the  pauper, but the statement of a naked principle of law as applicable to the case.   It makes the interruption of a person's residence depend upon his intention to abandon, or of his not returning, or both.

Two propositions are involved.   First, if a person leaves his place of residence, taking with him all he has, leaving behind nothing to indicate that he has any home or residence there, at the same time has no intention as to whether he will or will not return ; is this, of itself, such an abandonment as under the pauper laws to interrupt his residence in that place ?   Second, does the question of inter-ruption depend, in any degree, upon the fact whether he did or did not return without having established a residence elsewhere ?

In answering the first question, we are led to ask another, what is necessary to continue a residence once established ? and this, to some extent, involves the nature or definition of a residence.   In our pauper law, "residence," " home," and " dwelling-place," have been used as synonymous terms.   In the statutes of 1821 and 1841, the word residence is used ; in the revision of 1857 home is substituted. In the decisions the several words are used indifferently and are held to mean the same thing.   *Warren* v. *Thomaston*, 43 Maine, 418.

In the same case, as in numerous others, it is held that to establish a " residence " within the meaning of the statute, there must be " personal presence without any present intention to depart."   In *Turner* v. *Buckfield*, 3 Maine, 229, it is said that the expression, " dwells and has his home," means a residence with an intention to remain, or at least " without an intention of removal."   In *Augusta* v. *Turner*, 24 Maine, 112 ; *Gardiner* v. *Farmingdale*, 45 Maine, 537 ; and *Corinth* v. *Bradley*, 51 Maine, 540, it is held that persons *non compos mentis* may reside in a town, within the meaning of the statute, so as to  acquire  a  legal  settlement  therein.    From these cases it would  seem to be well settled that a " residence " may be

established with the absence of any intention of removal, or that, so far as intention is a necessary element of a "residence," it will be conclusively inferred from an actual presence accompanied with such circumstances as usually surround a home.

Another principle, which may be considered as well settled in this State, is that a residence once established may be abandoned or lost, without having acquired another. *Exeter* v. *Brighton*, 15 Maine, 58; *Jefferson* v. *Washington*, 19 Maine, 293.

In regard to " domicile," a word not used in the pauper law, it is different. This cannnot be lost without gaining another. Every person owes some duties to society, has some obligations to perform to the government under which he lives, and from which he receives protection. These duties and obligations are not to be laid aside at will, but rest upon and attach to the person from the earliest to the latest moment of his life. His domicile is the place where those duties are defined and are to be performed. It is imposed upon him, by the law, at his birth; and though, when arriving at legal age, he may choose the place where it shall be, it is not at his option whether he will be without any. With regard to a " residence " or " home " it is entirely different. This is a matter of privilege exclusively. It imposes no public burdens, but is private in its nature, relates to personal matters alone, and is the place about which, to a greater or less extent, cluster those things which supply personal needs, or gratify his affections. Hence it is purely and wholly a matter of choice, not only as to the place where it shall be, but also whether there shall be any. If, then, a residence once established may cease to continue, under what circumstances are we to consider it at an end, or when is it abandoned? Not what amount or kind of testimony may be required to furnish satisfaction of its abandonment, but when, as a matter of law, does it cease to exist. It seems plain that when all the elements which constitute a home have ceased, that the home itself would cease also. If " residence " is made up of actual presence and intention, or presence without intention, where these are wanting, we shall look in vain for the residence. If the parts are all gone, it would seem, necessarily,

to follow that the whole would be missing too. If, as in the case of a *non compos mentis*, it is made up of a presence with such surrounding circumstances as to compel the inference of intention so far as that may be necessary, then the absence of that presence and all those circumstances would leave nothing upon which a home could be predicated. What can be a more complete annihilation of home, in the case of an intelligent person, than his departure, leaving nothing behind indicative of a home, without any intention of returning thereto. So of an imbecile, when his departure is under such circumstances that nothing is left behind to indicate a return, and the purpose of his going leaves no opportunity for inference as to any intention on his part or that of others as to his return. A " residence " or " home " is usually patent to all observers, and a matter in regard to which those acquainted with the facts are not easily deceived. But when not a vestige of that home is left, who can say that it exists, and how shall it be known whether a pauper has or has not acquired a settlement in any particular place. The fact that a man once had a home in a town, is not of itself proof, under the pauper laws, of its continuance when all indications of it are gone. Upon the party alleging a five years' residence is the burden of proof, and he must show it to have continued all the five years. But if the abandonment of a home, " with bag and baggage," with no intention of returning, is not an end of that home, then, in many cases, the jury would be obliged to find a five years' " residence " upon the proof of one month, or a day even. If a person, leaving a place, has no intention as to a return to it, then he certainly has no intention to return, and it would seem difficult to maintain that home without an intention to do so, when there is nothing else left of it.

It is believed, too, that the authorities, when correctly understood, are in harmony with these views. There is, in some of them, an apparent conflict with the principles here laid down. Nor do they all seem to be consistent with each other. As in *Warren* v. *Thomaston*, before cited, it is said, " And to break up such residence, when once established, there must be a departure with intention to

abandon," and so in many other cases, which it is unnecessary to refer to, a similar expression is used. But this conflict is more apparent than real, and on examination will disappear. It will be found that in these cases this precise question was not before the court, and the expressions used were all the cases required. There was in those cases, or supposed to be, an actual existing intention one way or the other, and usually the books have taken it for granted that every person, who has the capacity when making any movement or doing any act in relation to his home, will have some intention by which that act shall be qualified, and this assumption is ordinarily well founded. It is difficult to conceive of a man, leaving his home, the place which more nearly concerns his welfare than any other, without any intention as to whether he will or not return. And in the absence of an intention to return, it is quite as difficult to conceive of its being a home to him. If, then, we keep in view the fact that most of the decided cases are those in which an intention did, or was supposed to exist, we shall find them consistent, and so far as they bear upon this question support the views heretofore expressed. It is proper to remark here, that so far as this question is concerned, domicile and residence mean the same thing, and are so treated by the authorities; so far as place is concerned, both are matters of choice, and the one fixes the other, and each depend upon the same conditions of presence and intention.

In *Warren* v. *Thomaston*, relied upon by plaintiffs, on page 419, it is said, " The fact of abandonment, or not, depended upon the intention of the pauper when he departed." Thus assuming that the intention did exist, making no suggestion, even, as to the effect of a want of intention. The same may be said of *Mead* v. *Boxborough*, 11 Cush. 362, and *Carnoe* v. *Freetown*, 9 Gray, 357. *Worcester* v. *Wilbraham*, 13 Gray, 586, is decided upon the ground that the pauper could not lose one residence till he had established another, and so is not applicable. *Bangor* v. *Brewer*, 47 Maine, 97, so far as it has any bearing, is against the plaintiffs. On page 101, the opinion reads thus, " No question is now better settled, than

that, in order to break up an existing residence, such as the statute requires, there must be an act of removal from the place where it exists, accompanied by an intention, on the part of the pauper, to remain permanently at the place of removal, or at some other place; or, at least, the pauper must be without any present intention of returning to the place from which he removed." If the last part of this remark is true, it is decisive of this case. *Holmes* v. *Greene*, 7 Gray, 299, goes still further. It is there held that a person, removing with his family to another State, though retaining his place of business, and intending to retain his domicile at his former residence, and to return to it, did not retain his residence. A simple naked intent to retain his former home was not sufficient. There must be some outward *indicia* of that intent, something by which others interested might have some proof of his residence. So in *Whitney* v. *Ashland*, 12 Allen, 111, it is held sufficient to break up his residence or acquire a new domicile, if he resides in the new place with the intention of remaining there an indefinite period and without any fixed purpose to return to his former place of abode. In the opinion on page 114, it is said, " The plaintiff must have a domicile somewhere. It could not be in Ashland if he had gone to reside elsewhere, having no intention to return to his old home, or if his purpose was unformed or indeterminate, either as to the length of his residence in Sherborne, or as to his eventual return to Ashland." This case seems to be somewhat in point, when we remember that in Massachusetts a person " must have a domicile somewhere." The case shows how he may lose one domicile that he may gain another. In the same way he may lose his residence in this State, when it does not appear whether he has gained another or not. The case of *Jefferson* v. *Washington*, 19 Maine, 293, is very much like this in its facts, and seems to be decisive of it. On page 302 it is said, " If a man becomes a worthless, dissolute vagabond, a wanderer from place to place, and from town to town, often depending upon the hand of charity, wherever it may be found, for relief from present suffering, could it be said that such a man had a dwelling-place and home ? To the court it

would seem an abuse of terms." The case of *Corinth* v. *Bradley*, 51 Maine, 540, presents, substantially, the same question we have been considering. There the instructions required that the jury should find, in order to retain the residence left, that the pauper should "form and retain the intention of leaving for such temporary purpose and of returning." The case turned upon this point. *Wilbraham* v. *Ludlow*, 99 Mass. 587, is so much like this case that it would be difficult to distinguish it. Worcester defines domicile as "The place in which a person has a fixed residence, and to which, when he is absent from it, he has the intention of returning," and gives Burrill as his authority. The inference seems to be inevitable, both from principle and authority, that when a person leaves his place of residence with everything he has, without any intention as to returning, he has, under the pauper laws, abandoned that whether he has established another or not.

This brings us to the second proposition involved, Does the question of interruption depend, in any degree, upon the fact whether he did or did not return? The instruction is, that if under the facts stated, "he did, in fact, return without having established a residence elsewhere, his absence would not constitute an interruption of his residence in West Gardiner." The inference is, that if he did not return, his residence would be interrupted, or, that in order to break up his residence he must have established one elsewhere. If he had established a home elsewhere it would have been an interruption to his residence in West Gardiner, for under our law he could not have two at the same time. But, as we have already seen, the continuance of his home in West Gardiner could in no way depend upon his having established another, for he may have been without any. It is evident, also, that the continuance of the pauper's home depended, in no degree, upon his return. When he left, his residence ended, or it did not. If it ended, his return would not relate back so as to renew it from the time he left; in other words, restore that which had already ceased to exist. It might, indeed, establish a new home, but could not revive the old one. If such were the case, it might very pertinently be asked,

how long shall we wait for his return? Suppose the pauper had resided in town four years and was then absent two. What would be his condition at the end of five years? Shall we say he had no settlement then, but when he returns his old residence is revived, and now he has a settlement and has had one from the end of the five years?

It is true the question may be settled by other circumstances proved, but we are considering the state of facts contemplated by the instruction, and trying it by that test. The difficulty seems to be that the instruction lays down, as a conclusion of law, that which should have been left to the jury as a question of fact. This distinction has been overlooked in several of the reported cases, as in *Corinth* v. *Bradley*, 51 Maine, 540. The return of the pauper is made a necessary element in the continuance of his residence, when, in fact, it is only a matter of evidence for the jury to weigh, more or less cogent, as the absence may be of longer or shorter duration, or according to the circumstances attending it. Intention must always be proved by acts or the declaration of the party or both. If a person leaves his place of residence, with all he has, the jury are to draw the inference as to his object or purpose in doing so. If from weakness, or other cause, he has no intention or purpose in view, still it is for the jury to say, from the circumstances, whether he still retains a residence in the place left, and if a return or want of one is proved, this is to be considered as a question of fact, having such weight as it may be entitled to.

*Exceptions sustained.*
*New trial granted.*

APPLETON, C. J.; KENT, DICKERSON, and TAPLEY, JJ., concurred.

CUTTING, WALTON, and BARROWS, JJ., did not concur.