# TOWN OF JERICHO v. CITY OF BURLINGTON.

## MAY TERM, 1894.

### *Pauper. Residence. When retained.*

1.  To retain a residence, within the meaning of the pauper law, there must be both a definite intention to return and a place to which the person has a right to return.

2.  Where one, having a residence in a particular town, sells all his effects and goes to work in a neighboring town, leaving no place to which he has the right to return, he will lose his residence in the former town, although he has an indefinite intention of returning there at some future time.

3.  *Rockingham* v. *Springfield*, 59 Vt. 521, overruled.

General and special assumpsit for the expense of keeping a pauper. Plea, the general issue. Trial by jury at the September term, 1893, Chittenden county, MUNSON, J., presiding. At the close of the testimony the court ordered a verdict for the defendant. The plaintiff excepts.

*M. H. Alexander* for the plaintiff.

The pauper was a transient in Jericho. *Danville* v. *Putney*, 6 Vt. 512; *Bristol* v. *Rutland*, 10 Vt. 574; *Browning-ton* v. *Charleston*, 32 Vt. 411; *Charleston* v. *Lunenburg*, 23 Vt. 525; *Barnet* v. *Ray*, 33 Vt. 211; *Leicester* v. *Brandon*, 65 Vt. 544; *Vershire* v. *Hyde Park*, 64 Vt. 638; *New Haven* v. *Middlebury*, 63 Vt. 399; *Chittenden* v. *Stockbridge*, 63 Vt. .308; *Rowell* v. *Vershire*, 62 Vt. 405; *Topsham* v. *Chelsea*, 60 Vt. 219; *Worcester* v. *East Montpelier*, 61 Vt. 139.

34

*Daniel Roberts* for the defendant.

The pauper did not retain a residence in Burlington, for he left no place there to which he had a right to return. *Berlin* v. *Worcester*, 50 Vt. 23; *Jamaica* v. *Townshend*, 19 Vt. 267; *Barton* v. *Irasburg*, 33 Vt. 159.

His intention to return was not sufficiently definite. *Middlebury* v. *Waltham*, 6 Vt. 200; *Pittsford* v. *Chittenden*, 44 Vt. 392; *Stamford* v. *Readsboro*, 46 Vt. 606.

TYLER, J.   The plaintiff's evidence tended to show that the pauper and his wife had resided and kept house in defendant city three or four years prior to his wife's death, which occurred in July, 1891; that he then sold all his furniture except an old chest and two old chairs and went to board in the family of one Bashaw in the city—which was the only place he could call his home—taking his chest and chairs with him; that the last of the next November he went to the plaintiff town in search of work, leaving at Bashaw's his chest, chairs, a trunk containing some clothing, a wood-saw and a hat; that this was all the property he possessed besides the clothes he wore; that he secured a small job of work in Jericho at one Cook's with whom he boarded, and after finishing his job, which occupied four or five days, he returned to Burlington, gave his chest and chairs to Mrs. Bashaw, took his trunk and clothing with him and returned to Cook's in Jericho, leaving nothing of his in Burlington but a hat which he could not find, and his saw which he meant to have taken but forgot; that he had engaged to board with Cook while he did a job of chopping which he had contracted to do, and also to board with him during the winter if he should succeed in finding work; that after working three or four days he broke his leg and was taken care of about five weeks by Cook, when the latter, at his request, carried him to Burlington and left him at Bashaw's; that the plaintiff paid the bills for the pauper's

board, care and medical treatment while he was at Cook's, to recover which this suit was brought. The plaintiff's evidence also tended to show that the pauper did not intend to make his home in Jericho, but that he intended to return to Bashaw's in Burlington when his employment was ended in Jericho, but there was no agreement between himself and Bashaw that he might return to the house of the latter.

The main question is whether upon this evidence the court was warranted in directing a verdict for the defendant.

The pauper testified that when he was about leaving Bashaw's with his trunk, he said to Mrs. Bashaw, "When I get through at Cook's this is my home and I shall come back again," and that he said to Cook, who was moving him, "You will bring me back, will you?" Cook replied that he would; Mrs. Bashaw made no reply. Her husband was not present. The plaintiff's evidence tended to show that it was the pauper's intention at that time to remain through the winter in Jericho and board with Cook if he succeeded in finding work. It appeared that one Wright had charge of the construction of sewers in the defendant city and that the pauper had worked under him four seasons, including that of 1891. It was proposed by plaintiff's counsel to inquire of Wright what arrangement or conversation, if any, he had with the pauper about returning to work on the sewers the following season. The questions were excluded. It was not offered to be shown that Wright did employ the pauper for the season of 1892, or that he had authority to employ him. If he had had authority and employed him it would have shown a mere intention on the part of the pauper to return to Burlington to labor, and the evidence would have been immaterial.

The plaintiff's case, including the testimony of Wright had it been admitted, would only have shown an intention on the part of the pauper to return to Burlington at some indefinite time when he should get out of employment in Jeri-

cho, or when he should obtain employment again in Burlington. When he moved his trunk and all his possessions except his saw and hat from the defendant city, he had no place there to which he had a right to return.

The reasoning of Aldis, J., in *Barton* v. *Irasburg*, 33 Vt. 159, applies directly to this case:

"A house holder who has a family and a house to return to; a single person who has an accustomed home, or personal effects and worldly goods to go back to, may well be supposed to have the intention of returning. Hence in many cases the place where one keeps his effects, his chest, etc., is said to be his home. If he takes his all with him and leaves no home behind him, then he may be thought more reasonably to carry his home with him."

It was further said in that case that while intention is an important element in determining the question of residence, yet it is not the only element, and is modified by the character, habits and business of the party, and the character of his old home, and of his new residence. In that case the pauper, having no family and no property except his clothes and two axes, and no particular place which he called his home, worked at different places in Barton from 1850 to 1859, with the exception that from July, 1852, to the spring of 1853, and from January, 1855, to the following spring, he worked in three other towns, to which he took all his property. His engagements to labor, both in Barton and elsewhere, were not made for any particular period, but his only purpose seemed to be to stay as long as he could wherever he could find employment.

In *Jamaica* v. *Townshend*, 19 Vt. 267, the pauper had resided in the plaintiff town; he purchased some land in another part of the town, cleared a part of it and cut some timber preparatory to the building of a house upon it. He then moved to Londonderry with his family, taking with him all his furniture excepting a few articles of little value or use, and resided in the latter town twenty-nine days, when

he moved back to Jamaica. It was held that though he intended speedily to build a house in Jamaica and return to live in it, yet if he left no dwelling or shelter in that town to which he intended to return, and intended to remain in Londonderry until he built his house, his removal interrupted his residence in Jamaica.

In *Berlin* v. *Worcester*, 50 Vt. 23, the pauper, when suddenly taken sick, was at work in the plaintiff town under a contract to work during that season. Her father being dead, she had at intervals and when not away at work made her home with her mother in defendant town, and in like manner with her sister in another town. She had no right by contract or otherwise to a home either with her mother or sister, nor had she a room or furniture at either place, but when she stayed with her mother or sister it was through their courtesy. Ross, J., said that,

" Home, or domicile, is a place where the person has a right to be. The idea of a right to be and remain at a particular place is inseparable from the conception of home or domicile."

It was held that, as there was no place in defendant town to which the pauper had a right to return, and had not the *animus revertendi*, she had come to reside within the meaning of the statute.

The doctrine in the case last cited is in consonance with the general course of decisions in this state. See the cases cited in the opinion. The law laid down in *Rockingham* v. *Springfield*, 59 Vt. 521, is at variance with our other decisions. That decision was by a divided court; its soundness has often been questioned and it must now be overruled.

It was held in the well considered case of *No. Yarmouth* v. *West Gardiner*, 58 Me. 207, that when a person leaves his place of residence with everything he has, without any intention as to returning, he has abandoned his residence,

whether he has established another or not; that the interruption of a residence does not depend upon the fact whether he did or did not return. *Holmes* v. *Greene*, 7 Gray 299; *Whitney* v. *Ashland*, 12 Allen 11; *Wilbraham* v. *Ludlow*, 99 Mass. 587.

Intention to return, such as the law recognizes, must be something more than a mere feeling or sentiment, a desire, some ultimate purpose not having a present fixed object. This has been repeatedly held; also, that mere intention does not constitute a residence. It must be a present, fixed, continuous intention, and have relation to a definite place to which the person has a right to return. The plaintiff's case lacked these elements and there was no error in directing a verdict for the defendant.

*Judgment affirmed.*

Start, J., did not sit, being engaged in county court.