# TOWN OF SOUTH BURLINGTON

v.

# TOWN OF WORCESTER.

## January Term, 1895.

*Pauper. Residence. Intention. Implied contract. Evidence.*

1.  A helpless pauper of full age, who resides in his father's family and is supported by him without aid from any town, is a resident of the town in which the father lives.

2.  Where such a pauper has been for many years a member of his father's family, and has no other home and no means of providing one, and the father removes with his family, including the pauper, into another town, the residence of the pauper changes with that of the father, irrespective of any intention which the pauper may or may not have as to the place of his home.

3.  The pauper was a helpless cripple without means, who for many years had lived in his father's family and been supported by him. Previous to December, 1888, the defendant town had contracted with the father to support the pauper until June, 1889. In December, 1888, the father, against the protest of the defendant, removed with the pauper into the plaintiff town, and continued to reside there, supporting the pauper without further arrangement with the defendant until his death, November 1, 1890. Thereupon the plaintiff was applied to, and assumed the support of the pauper. *Held*, that the plaintiff could not recover of the defendant for the support thus furnished, no claim being made under No. 55, Acts 1892.

4.  The defendant was under contract with the pauper's father to support him until the termination of a certain suit, which ended June 1, 1889. The plaintiff claimed that after the termination of this suit the father supported the pauper under an implied contract with the defendant. *Held*, that evidence that the father learned of the termination of the suit and afterwards began and prosecuted a claim against the defendant for support furnished subsequently to June, 1889, had no tendency to show such an implied contract, and was improperly admitted.

Assumpsit for the support of a pauper. Plea, the general issue. Trial by jury at the April term, 1894, Chittenden county, ROWELL, J., presiding. A special verdict was taken, and judgment given thereon for the plaintiff. The defendant excepts.

*S. C. Shurtleff* for the defendant.

The defendant was under no obligation to support the pauper in the father's family after the termination of its contract with the father, nor to bring the pauper back to Worcester. *Durfey* v. *Worcester*, 63 Vt. 418; *Danforth* v. *Walker*, 37 Vt. 239.

Therefore, the pauper was a resident of the plaintiff town when that town was applied to for aid. *Chittenden* v. *Barnard*, 61 Vt. 145; *Chittenden* v. *Stockbridge*, 63 Vt. 308; *New Haven* v. *Middlebury*, 63 Vt. 399; *Craftsbury* v. *Greensboro*, 66 Vt. 585.

*D. J. Foster* for the plaintiff.

The pauper, while supported in the plaintiff town by the defendant town, was transient in the plaintiff. *Leicester* v. *Brandon*, 65 Vt. 544.

THOMPSON, J. This is an action to recover for the support of Daniel Durfee, a pauper, from December 23, 1890, to January 18, 1893. The plaintiff's evidence tended to show

that Milo Durfee, the pauper's father, formerly lived in East Montpelier, and moved from there to Worcester.

When Daniel was a little past twenty-four years old he was so hurt that it made him a helpless cripple for life. When he was thus hurt his father was living in Worcester, and had then lived there about six years. Daniel had always made his home at his father's, although he had worked out more or less, and had his wages after he became of age. He had a little property at the time he was hurt, and for the first year thereafter his father took care of him without aid from the town, but was paid therefor by Daniel; but at the expiration of that year, Daniel's property having been exhausted, East Montpelier was applied to for his support and assumed it, and continued to support him until the passage of St. 1886, No. 42, when it withdrew its support and refused further aid. Thereupon, Daniel still residing in Worcester with his father, where they had both continued to live, Worcester was applied to for Daniel's support and assumed it for the time being, at the same time claiming that East Montpelier was still liable for his support notwithstanding that law, and brought suit against it to test the question, and such proceedings were had therein that it was finally decided that˙ East Montpelier was not thus liable, but that the burden of such support was cast by that law upon Worcester. While that suit was pending and before December, 1888, Worcester, by its overseer of the poor, agreed with the pauper's father to pay him five dollars a week to take care of him until that suit terminated, and the father took care of him under such contract, for which Worcester paid him quarterly before the December last named the sum called for by the contract. About December 1, 1888, Milo Durfee prepared to move his family and Daniel to South Burlington; and the overseer of the poor of Worcester hearing of it objected to Daniel's being removed from the town, and told Milo Durfee that he must not take him out of town, and that if he did the town would not thereafter pay anything for his

support; and that he himself would take Daniel, or get a place for him, but that he must not be taken out of the town. Thereupon Milo Durfee told the overseer that he should take Daniel with him, if he went, whether the town paid him anything for his support or not; and about that time he moved to South Burlington, taking Daniel with him, and thereafter continued to reside there until his death in November, 1890, and Daniel remained in his family all the time and was supported by him.  After Milo Durfee's death the family continued to reside in South Burlington, and Daniel still remained in the family until his death, which occurred March 25, 1893.  After the death of Milo Durfee application was made to South Burlington to aid Daniel, who was poor and in need of relief, and that town thereupon assumed his support in December, 1890, and immediately thereafter gave Worcester the necessary notice that he was chargeable to South Burlington, and that that town would look to Worcester for reimbursement in the premises.  The plaintiff continued to support the pauper until his death at an expense of five dollars per week, paid quarterly.  The defendant conceded that that was a reasonable sum, and that the plaintiff was entitled to recover it with interest thereon, if entitled to recover at all.  It appeared that the suit between Worcester and East Montpelier terminated in June, 1889, and the plaintiff's evidence tended to show that soon afterwards Milo Durfee learned of its termination.

The defendant controverted the contract between Worcester and Milo Durfee in respect to the time which the plaintiff claimed it was to continue, and introduced evidence tending to prove that it was for no specified time.

At the close of the evidence the defendant waived going to the jury on any questions except two, viz. :   (1) Whether the town of Worcester made such a contract with Milo Durfee as the plaintiff claimed and its evidence tended to show, and (2) what the character of Daniel's removal to South Bur-

lington and of his subsequent stay there was, the defendant claiming that thereby he became and was a resident of that town, and was not a transient therein at the time that town assumed his support, and for that reason, if for no other, recovery could not be had; and the case was submitted to the jury accordingly.

No general verdict was returned, and three questions only were submitted to the jury, which, with the answers thereto, are as follows:

1. "Did the town of Worcester contract with Milo Durfee to pay him five dollars per week for supporting Daniel until the suit then pending between Worcester and East Montpelier was terminated, as the plaintiff's evidence tends to show? Answer. Yes."

2. "Did Daniel Durfee move from the town of Worcester to South Burlington in December, 1888, with the intent of residing at South Burlington as his home? Answer. No."

3. "Did Daniel Durfee at any time subsequent to June, 1889, and before December, 1890, intend to make South Burlington his home? Answer. No."

The court found all the things to be true that the plaintiff's evidence tended to prove concerning matters on which the defendant did not desire to go to the jury, and on such findings of the court and the special verdicts rendered judgment for the plaintiff for the amount claimed, to which the defendant excepted, and insisted. that the judgment ought to be in its favor.

I. The plaintiff contends that the judgment of the county court in its favor can be sustained under the holding of this court in *Leicester* v. *Brandon*, 65 Vt. 544. Whatever may be said of the soundness of that decision, which was rendered by a divided court, it is clear that the case at bar does not come within the reasoning adopted by the court in that case. There, as reported, Brandon while supporting the pauper in Brandon, made arrangements with a person then residing in Leicester, by which the pauper was to be kept by him in the latter town, both parties reserving the right to have her re-

moved from Leicester at any time. While the pauper was being kept in Leicester under this arrangement she became chargeable to that town, and it was held that "in legal contemplation her actual residence was in Brandon, while she was transient in Leicester." In the case at bar the pauper was never kept in the plaintiff town with the consent nor by the procurement of the defendant. The special contract with Milo Durfee for the pauper's support terminated by its own limitation in June, 1889. As between the defendant and Milo Durfee, the defendant was not bound to follow the pauper to South Burlington and re-take him at the expiration of the contract. If Milo Durfee desired to charge the defendant with the pauper's further support, he should have returned him to it at the expiration of the contract. Under the facts stated, there was no implied contract on the part of the defendant to pay Milo Durfee for the support of the pauper. *Baldwin, Admr. of Milo Durfee* v. *Worcester*, 67 Vt.    ; *Newton* v. *Waterford*, 67 Vt.    . At the expiration of the special contract the pauper was of full age, and from June, 1889, to November, 1890, he, with the aid of his father, supported himself in South Burlington. Thus in law the pauper supported himself during this time. *Craftsbury* v. *Greensboro*, 66 Vt. 585. When he came to want in South Burlington he was not then being supported by the defendant, and hence the case does not fall within *Leicester* v. *Brandon*.

II.    Daniel Durfee's home was always with his father. The father's home, wherever it was, was his home. He never had any other place he could call his home. When he moved from Worcester to South Burlington he left there no place nor home to which he had a right to return, nor did he leave any personal effects in Worcester. From June, 1889, to November, 1890, he resided with his father at that father's home in South Burlington, supporting himself within the meaning of the law. He was unmarried, and had no family of his own. It is true that usually intention is an important

element in determining the question of residence, but in this case the court below erred in its instructions to the jury, in making that question turn solely upon whether Daniel moved to South Burlington in December, 1888, with the intent of residing there, and whether subsequent to June, 1889, and before December, 1890, he intended to make South Burlington his home. It also erred in its instructions in respect to the pauper being transient as to Worcester subsequent to June, 1889. Under the undisputed facts as shown by the plaintiff's evidence, the jury should have been instructed that at the time the plaintiff assumed the pauper's support he was not transient in South Burlington, and that a verdict should therefore be returned for the defendant. *Jericho* v. *City of Burlington*, 66 Vt. 529.

The plaintiff does not contend that any part of its claim is covered by St. 1892, No. 55, but puts its right of recovery upon the ground that the pauper was transient under St. 1886, No. 42.

III. Against the exception of the defendant the plaintiff was permitted to show that Milo Durfee learned that the suit between Worcester and East Montpelier was terminated in favor of East Montpelier. This evidence was admitted as tending to prove that Milo Durfee thereafter kept the pauper under such circumstances as to constitute an implied contract on the part of Worcester to pay for such support.

Against the defendant's exception, and as tending to prove such an implied contract on the part of Worcester, the plaintiff was also permitted to show that Milo Durfee commenced suit against it, returnable to the September term, 1890, of Chittenden county court, to recover for the support of Daniel from the time of the termination of the suit between it and East Montpelier; that the death of Milo Durfee was suggested in the case at the April term, 1891, and his administrator entered to prosecute the suit, and that it was then pending.

The evidence had no tendency to prove an implied contract

on the part of Worcester, and it was error to admit it for that purpose.    We must assume that the county court considered it for the purpose for which it was admitted, in finding the facts which it found, and from the judgment rendered it is to be inferred that it must have found that the pauper was kept after June, 1889, until Milo Durfee's death under such an implied contract, so that the case fell within the rule laid down in *Leicester* v. *Brandon*.    If such a finding was made, there was no evidence to support it.

*Judgment reversed and cause remanded.*