# TOWN OF ST. JOHNSBURY

v.

# TOWN OF CONCORD.

### MAY TERM, 1896.

*Pauper. Residence. What is necessary to continue when physically absent.*

1. To retain a residence under the pauper law there must be a definite intention to return and a place to which the person has a right to return, and the right of an emancipated child to return to his mother's house is not such a right.

2. So where the pauper left his mother's home and went into another state to seek employment, intending to remain so long as that employment should prove profitable, found work, married and lived there until his employment ceased, this would interrupt his residence in the town from which he went.

General assumpsit. Heard upon the report of a referee at the September term, 1895, Caledonia county, Ross, C. J., presiding. Judgment for the plaintiff *pro forma*. The defendant excepts.

The plaintiff sued for the support of a pauper. The pauper was an only son. His father by will left all his property to the mother during her life, and what might remain at her death to the son. This property consisted mostly of a farm and stock in the town of St. Johnsbury which was sold and the proceeds invested in a village residence in the town of Concord. In October, 1857, the mother and pauper, who was

32

then of age, moved onto the place in Concord, and continued to reside there as one family until April, 1860, when the pauper went to Manchester, N. H. It was not claimed that the pauper had a residence in Concord, if this removal to Manchester interrupted the continuity of his residence there at that time, and this was the question litigated. Upon this point the referee found the following facts :

"Early in the month of April, 1860, being out of employment, said Moses went to Manchester, N. H., to seek employment at his trade as a moulder, taking with him his 'kit of tools' and an extra suit of clothes but leaving some of his clothing, including his 'best suit,' at his then home at his mother's house.

"On the day after his arrival at Manchester he obtained employment, and continued to work there until about the first of August, 1860. On the 8th day of July, 1860, while at Manchester, he married a young girl sixteen years of age, who was then a weaver in one of the factories in that city but whose home was, at the time of her marriage, in North Groton, N. H.

"Before his marriage said Moses boarded and occupied a room at some boarding-house in Manchester, and after his marriage his wife went to his boarding-house to live there with him as boarders, and they so continued to live there until about the first of August, 1860, when he, being again out of employment, with his wife, went to her father's in North Groton for a short visit on their way to his mother's place in Concord. After having made their visit of a few days' duration, they went to Concord, to his mother's house, and took up their residence there, occupying the same room that he had occupied before he went to Manchester."

*Geo. N. Dale* for the defendant.

The pauper was a resident of Manchester, while there. *Middlebury* v. *Waltham*, 6 Vt. 202 ; *Barton* v. *Irasburgh*, 33 Vt. 160 ; *Jamaica* v. *Townshend*, 19 Vt. 268 ; *Sharon* v. *Cabot*, 29 Vt. 394.

The pauper had no right to return to his mother's home.

*Berlin* v. *Worcester*, 50 Vt. 23 ; *Jericho* v. *Burlington*, 66 Vt. 529; *Londonderry* v. *Landgrove*, 66 Vt. 264.

*W. P. Stafford* and *Harry Blodgett* for the plaintiff.

A careful analysis of all the cases shows that, while the pauper had not perhaps a strictly legal right to return to his mother's house against her objection, his residence remained there. *Middlebury* v. *Waltham*, 6 Vt. 202 ; *Newbury* v. *Thompson*, 7 Vt. 410 ; *Jamaica* v. *Townshend*, 19 Vt. 270 ; *Hulett* v. *Hulett*, 37 Vt. 585 ; *Jericho* v. *Burlington*, 66 Vt. 530 ; *Ross* v. *Ross*, 103 Mass. 575 ; *Mitchell* v. *U. S.*, 31 Wall. 350 ; *Desmore* v. *U. S.*, 93 U. S. 605 ; *Ringgold* v. *Barley*, 59 Am. Dec. 111.

TAFT, J. The pauper went to Manchester, N. H., to seek employment upon his own account, and for his own benefit. He intended to remain away so long as he could make it profitable, and so long as he had work. He found employment, followed it, married a wife, lived with her, and continued there until his employment ceased. When he went to Manchester he had no present definite intention of returning to Concord. He had no home in Concord to return to as a matter of right and the case does not show that there was any understanding between him and his mother that he should return to her house. The referee finds that he had no more right to return to his mother's house than any emancipated child has to return to the house of its parents. This in a legal sense is not a right. To retain a residence within the meaning of the pauper law, there must be a definite intention to return and a place to which the person has a right to return. *Jericho* v. *Burlington*, 66 Vt. 529. The only sensible conclusion to which we can consistently come, is, that the pauper was a resident of Manchester and his residence in Concord was interrupted by it. Under this holding it is conceded that the defendant is not liable.

*Judgment reversed and judgment for the defendant.*