Strafford,
Dec. 4, 1917.

SAMUEL D. FELKER *v.* CHARLES H. HENDERSON & a.

Under P. S., c. 31, s. 9, an intention to return to a former residence on the part of one who has removed therefrom to another place with the intention of making it his domicile for an indefinite time, cannot be established solely by evidence of his declaration of an intention to return upon the happening of some contingent, indefinite and undisclosed event.

PETITION, for a mandamus to compel the defendants as supervisors of the check-list in Rochester to put the plaintiff's name upon the check-list of Ward 3. The court granted the prayer of the petition, and the defendants filed this bill of exceptions, which was allowed by *Branch*, J., at the September term, 1916, of the superior court. The facts are sufficiently stated in the opinion.

*James W. Remick, Felker & Gunnison,* and *Drew, Morris, Shurtleff & Oakes (Mr. Morris* orally), for the plaintiff.

*Streeter, Demond, Woodworth & Sulloway* and *William Wright (Mr. Demond* orally), for the defendants.

WALKER, J. The evidentiary facts bearing on the question of the plaintiff's right to vote in Ward 3 in Rochester are not disputed; and they may be stated as follows: He was born in that part of Rochester now known as Ward 3 and resided there with his parents, and, after becoming twenty-one years of age, he continued to reside there and had his legal residence there until 1901, when he was married. Previous to that time he had an office in Ward 5 where he practiced his profession as a lawyer, still having his home in Ward

3. Soon after his marriage, in 1901, he rented a house in Ward 5, where he and his wife have ever since lived and had their actual home, as he testified. They have never lived at the ancestral place in the sense of keeping house there. There was a general understanding entertained by the plaintiff's parents that the ancestral home which they owned should upon their decease descend to the plaintiff and his brother; and upon the death of the mother in 1903 and the death of the father in 1911 it did so descend, and the plaintiff and his brother have since owned the place. The plaintiff has always claimed the right to vote in that ward and had voted there until December, 1915, when his name was taken off the check-list by the defendants acting as the supervisors. On October 26, 1901, he filed a written notice in the office of the city clerk of Rochester claiming that his residence was in Ward 3 and that his absence was only temporary. He has had several hearings before the defendants on the question of his right to vote in Ward 3, viz., on December 6, 1915; March 13, 1916, and September 4, 1916. At each of these hearings the defendants refused to put his name on the list upon the ground that he had no voting residence in that ward. Thereupon this petition for a mandamus to compel the defendants to put his name on the list was filed. In the course of the hearing upon the petition the plaintiff testified fully in regard to the foregoing facts, and also stated that when he filed the above mentioned notice he expected to return to Ward 3 upon the happening of a certain event, the nature of which he declined to state; and subsequently was permitted to withdraw what he had testified to upon that point. Without disclosing what the event was, he stated that he intended to return if things came about as he thought they would. On October 4, 1916, the court granted the prayer of the petition and the defendants excepted.

One question thus raised is whether the finding or ruling of the court, to the effect that the plaintiff was a legal voter in Ward 3, is, as a matter of law, supported by the evidence, about which there is no dispute. And it is this question upon which, it is understood, both sides desire a decision. If it is held that the evidence is not sufficient to support the finding, it will become unnecessary to consider whether the court had jurisdiction to make the order that was made or whether for any other reason the order is erroneous.

The constitution of New Hampshire provides (Part II [art. 29 (30)]) that "Every person qualified as the constitution provides shall be considered an inhabitant, for the purpose of electing and

being elected into any office or place within this state, in the town, parish, and plantation where he dwelleth and hath his home." The legislature, having authority to provide regulations for the exercise of the right of voting (*Davis* v. *School District*, 44 N. H. 398), has provided that, "Every male inhabitant of each town, being a native or naturalized citizen of the United States, of the age of twenty-one years and upward . . . shall have a right, at any meeting, to vote in the town in which he dwells and has his home," (P. S., *c*. 31, *s*. 1); that "No person shall be considered as dwelling or having his home in any town, for the purpose of voting or being voted for at any meeting, unless he shall have resided within such town six months next preceding the day of meeting," (*Ib.*, *s*. 8); and that, "A residence acquired by any person in any town shall not be interrupted or lost by a temporary absence therefrom, with the intention of returning thereto as his home." *Ib.*, *s*. 9. It is also provided that wards in cities shall be deemed towns for the purpose of elections. P. S., *c*. 46, *ss*. 4, 5.

The plaintiff's claim is that his ancestral home continued to be his voting residence after his marriage in 1901, although he established a home in Ward 5 which he has ever since maintained. He insists that his absence from Ward 3 has been temporary and accompanied with an intention on his part of returning to Ward 3 as his home, where he is the owner of certain real estate consisting in part of the ancestral home. He concedes that his home as usually understood has been for some fourteen years in Ward 5. He has kept house there ever since his marriage and carried on there his business as a lawyer. His acts in this respect indicate very strongly that he "dwelleth and hath his home" for voting purposes in Ward 5, and not in Ward 3 where he has not lived for many years or maintained a home. "By home as that word is used in the law of domicile is intended what every one has in mind when he thinks of home,—his principal residence, the place to which he always intends to return, or the one place he thinks of as home." *Kerby* v. *Charlestown*, *ante*, 301, 303. The fundamental idea of domicile is home. Jacobs Domicil, *s*. 183.

Upon this state of facts the *prima facie* presumption is that the plaintiff abandoned his original residence, when he took up his residence in fact in another ward. The facts do not indicate that he was temporarily absent from his former home but lead to the opposite conclusion, unless the evidence of his intention is sufficient to prove the temporary character of his absence.

By the use of the word "intention" in the statute it is reasonably clear the legislature did not mean an undefined or undefinable purpose on the part of the voter to return to his former residence at some unknown time during the course of his life.   To entertain a doubtful, vague or equivocal purpose to return does not prove the fact of "intention" as used in the statute, when reasonably construed, in view of the legislative object and the general law on the subject of domicile.   That a person may live in one voting district and do business there and at the same time retain a right to vote in another district is undoubtedly true; but the right depends upon a reasonable intention to resume his former home and to rebut the presumption that he had abandoned it.   Can it be said that such a reasonable intention may be inferred from the voter's statement in court that he has such an intention accompanied by his refusal to state what event would cause him to return or when it might happen?

This question must be answered in the negative upon the authorities, which hold that the intention to retain a former domicile is unavailing if it is vague and indefinite in respect to the event upon which the intended return is predicated and in respect to the time of its occurrence.   "If a person has actually removed to another place, with an intention of remaining there for an indefinite time, and as a place of fixed present domicile, it is to be deemed his place of domicile, notwithstanding he may entertain a floating intention to return at some future period."   Story Confl. Laws (7th ed.) s. 46. This statement has been generally recognized and applied in this country in cases of municipal domicile.   "A mere contingent intention, a vague and uncertain intention, or, in the language of Story, a 'floating intention' to return, however, will not prevent a change."   Jacobs Domicil, s. 184.   "Mere intention cannot effect the change, but the intention to remain, coupled with the act of actual residence, establishes the domicile, notwithstanding a floating intention to return at some future time."   *Titterington's Estate,* 130 Ia. 356, 358; *State* v. *Groome,* 10 Ia. 308, 315; *Frame* v. *Thormann,* 102 Wis. 653, 667.

To the same import are the cases in this state.   See *Hart* v. *Lindsey,* 17 N. H. 235, 243; *Foss* v. *Foss,* 58 N. H. 283; *Currier* v. *Woodward,* 62 N. H. 63.

In *Holmes* v. *Greene,* 7 Gray 299, 301, it is said that "evidence of a mere intent cannot establish the fact of domicil."   In *Barton* v. *Irasburgh,* 33 Vt. 159, 162, the court say that the intention to re-

turn, to be effective, "is not a mere feeling or sentiment, a desire, the yearning of the untravelled heath, some ultimate purpose not having a present fixed object. It must not be a remote and secret intention over which the present intention of residence at the new place dominates." Minor Confl. Laws, s. 61 states the principle as follows: "It is not necessary that there should be a fixed intention to remain *during one's whole life.* A mere floating intention to return to a former home or to live elsewhere at some future period unfixed and contingent upon circumstances, as upon an indefinite restoration to health or when one's fortune has been made, will not prevent the acquisition of a domicil at the new abode." Other authorities are the following: *Hallet* v. *Bassett,* 100 Mass. 167; *Wilbraham* v. *Ludlow,* 99 Mass. 587; *Ennis* v. *Smith,* 14 How. 400, 422–423; *Firth* v. *Firth,* 50 N. J. Eq. 137; *Wright* v. *Schneider,* 32 Fed. Rep. 705; *Shaeffer* v. *Gilbert,* 73 Md. 66, 71; 14 Cyc. 840–841; Paine Elections, s. 47. The reason for the doctrine as thus announced, apparently is, that it is unreasonable to hold that, when it is provided by statute or by judicial decision that one may retain a former residence if he has an intention to return to it as his home, a declared intention based upon the mere happening of some indefinite and undisclosed event is sufficient evidence of a well-formed and deliberate purpose to retain a residence which is otherwise abandoned. The law of domicile does not rest upon conjecture, speculation or personal caprice.

What the event was, upon the happening of which the plaintiff intended to return to Ward 3 is not only not disclosed by the evidence but was deliberately concealed. It does not appear that it was such an event as reasonable men could find he was justified in anticipating or that it was substantial and relatively important rather than trivial and insignificant. Nothing could be more indefinite than his statement in evidence that he intended to return to Ward 3, if things turned out as he thought they would.

As the evidence did not authorize the finding that the plaintiff has a right to vote in Ward 3, the order of the court is vacated.

*Exception sustained: judgment for the defendants.*

All concurred.