Strafford
No. 89-010

GARY B. BISSON AND TODD D. BISSON

v.

UNIVERSITY OF NEW HAMPSHIRE,
TRUSTEES OF THE UNIVERSITY SYSTEM
AND KATHRYN P. FORBES, RESIDENT OFFICER

July 13, 1990

*Burns, Bryant, Hinchey, Cox and Schulte P.A.*, of Dover, and *Gary Bryan Bisson*, of Washington, D.C. (*James H. Schulte* and *Mr. Bisson* on the brief, and *Mr. Schulte* orally), for the plaintiffs.

*Devine, Millimet, Stahl & Branch P.A.*, of Manchester (*J. Michael McDonough, III*, and *Arnold H. Huftalen* on the brief, and *Mr. Huftalen* orally), for the defendants.

THAYER, J.   This case presents us with the question of whether, when ruling on the parties' cross motions for summary judgment, the Trial Court (*Nadeau*, J.) erred in granting that of the defendants, thereby upholding the decision of the University of New Hampshire Board of Trustees that the plaintiff Todd D. Bisson was not entitled to the benefit of in-state status for purposes of determining tuition costs. For the reasons that follow, we affirm.

In August of 1982, Todd Bisson, a high school graduate of the International School of Kenya and unemancipated son of plaintiff Gary

Bisson, a foreign service officer then stationed in Kenya, enrolled at the University of New Hampshire (UNH) as an out-of-state student from the Commonwealth of Virginia, the undisputed domicile of his father at that time. On December 2, 1983, however, Todd, claiming that his parents had terminated their residence in Virginia and had established residence and domicile in the State of New Hampshire as of June 1983, applied to the University Registrar's Office for in-state status for tuition purposes. The registrar's office denied this application, noting that Todd's parents were not living in New Hampshire and had not been domiciled in the State for twelve months, prerequisites for establishing domicile as mandated by the University Rules at that time.

A subsequent appeal to the University of New Hampshire Residency Appeal Board (appeal board) did not provide the plaintiffs with the relief they sought. Additional evidence was presented to and considered by the appeal board, but Todd was still denied in-state status because his parents had not resided in New Hampshire since 1959. The University of New Hampshire Board of Trustees (board of trustees) upheld the decision to deny Todd the in-state classification. The plaintiffs' ultimate appeal to the superior court, as authorized by RSA 187-A:16, XIX, also proved fruitless, as it was dismissed with prejudice for failure to file within the thirty-day appeal period.

Undaunted, Todd re-applied for in-state status in June of 1985. Once more, however, the registrar's office denied his request, stating that Todd's parents did "not live in New Hampshire and [did] not meet the definition of domicile included in the rules governing tuition at UNH." The plaintiffs again took advantage of the appellate avenues available to them, but did not prevail. The appeal board, finding that Todd's "parents' circumstances [had] not significantly changed since 1984," believed them to be "domiciled outside of New Hampshire." Even though it acknowledged the fact that the Bissons owned property in the State and provided "other indicia which help[ed] support the claim of domicile in New Hampshire," the appeal board concluded that Todd's parents had "not lived in New Hampshire for any period since 1959." The Bissons then appealed to the board of trustees, which declined to conduct a review.

Dissatisfied with this result, the plaintiffs appealed to the superior court. Both parties filed motions for summary judgment, each asserting the existence of no genuine issue of material fact and entitlement to judgment as a matter of law. After a hearing on the motions, the trial court, recognizing that the issue before it was to ascertain

whether Todd Bisson's parents were domiciliaries of the State of New Hampshire at the time of Todd's application for in-state status, found that UNH "ha[d] consistently required 'habitation' in the State of New Hampshire along with an intention to remain here before it will confer in-state status to a student." The superior court further found that "[a]lthough the plaintiffs may have formed the requisite mental state for domicile, [it could not] say the Trustees' determination that they failed to meet the requirement of physical presence or 'habitation' was unreasonable or unlawful." The trial court therefore granted the defendants' summary judgment motion.

The plaintiffs now appeal to this court, their primary contention being that the trial court erred in finding neither unlawful nor unreasonable the defendants' determination that the plaintiffs failed to establish domicile in the State of New Hampshire. They also present for our review the related argument that the decision was "made without evidence or a record of a reasoned consideration of all material facts and issues and [was] therefore unreasonable and unlawful." The plaintiffs further complain that the board of trustees' refusal to review the record in this case was an abuse of discretion, and was unlawful and unreasonable. Finally, they argue that the trial court erred in refusing to grant their motion for summary judgment. In effect, the plaintiffs are asking this court to make the determination that Todd Bisson, during a portion of his student tenure at UNH, was entitled to in-state status for tuition purposes. Because we hold that the plaintiffs failed to plead facts sufficient to establish domicile in the State of New Hampshire, we affirm the decision of the trial court without reaching the other issues raised in this appeal.

The undisputed facts of this case, as presented to the trial court, are as follows. Plaintiff Gary Bisson (sometimes referred to as Mr. Bisson) was born and raised in the State of New Hampshire. He grew up in Gorham, is a product of the New Hampshire public school system, and graduated from UNH. In 1959, he entered the United States Foreign Service. Since that time he has spent the majority of his career serving this country overseas. In the late 1970's, however, he established domicile in Virginia while he was working at the Department of State in Washington, D.C. He purchased a home, paid Virginia taxes, and became a member of the Virginia bar. Mr. Bisson subsequently left Virginia in 1980 when he was posted to Kenya. He was later stationed in Swaziland and, in June of 1983, came to New Hampshire during his annual leave from the foreign service. No one

doubts that it was Mr. Bisson's desire at this time to relinquish his domicile in Virginia and to establish domicile in New Hampshire.

To this end, he purchased from his brother a one-half interest in the family ancestral home in Gorham. Since 1983, he has paid property taxes to the town of Gorham as well as resident taxes there for his wife, Ellen, and son, Todd. He also obtained a New Hampshire driver's license and opened a New Hampshire bank account which he continues to maintain. He registered to vote in New Hampshire and, in fact, has voted in every State and local election since 1983. He also terminated his voter registration in Virginia, went on inactive status with the Virginia bar and ceased paying taxes there. The Commonwealth of Virginia, recognizing Mr. Bisson's domiciliary change, provided him with a refund of taxes paid during the second half of 1983.

Furthermore, when he became eligible to be commissioned as a Foreign Service Officer in 1984, Gary Bisson was commissioned as a domiciliary of the State of New Hampshire. And, as of 1986, the federal government has recognized New Hampshire as Gary Bisson's official home and leave State.

The plaintiffs assert that the above enumerated facts are not in dispute and are sufficient to establish domicile for University purposes, thereby entitling them to judgment as a matter of law. The trial court did not agree, and we affirm.

At the outset, it is important to recognize that the board of trustees is authorized by State law to "[e]stablish a differential in the rate of tuition to be charged all in-state and out-of-state students." RSA 187-A:16, XVIII. Given this grant of power, the board of trustees is also statutorily permitted to "[a]dopt rules . . . establishing criteria for determining whether students shall be classified as in-state students or out-of-state students for tuition purposes." RSA 187-A:16, XIX. Pursuant to these legislative mandates, the board of trustees has seen fit to promulgate a number of rules governing the classification of students for tuition purposes. *See Vlandis v. Kline*, 412 U.S. 441, 453–54 (1973). It has decided that students will "be charged tuition at a rate to be determined by their domicile. Those domiciled within the State of New Hampshire shall pay the in-state rate," while "[t]hose domiciled elsewhere shall pay the out-of-state rate." UNIVERSITY RULE (Un) 811.01.

The University Rules define "domicile" as "a person's true, fixed and permanent home and place of habitation. It is the place where the person intends to remain and to which he/she expects to return when he/she leaves without intending to establish a new domicile

elsewhere." Un 811.08. For University purposes, an unemancipated student is deemed to possess the domicile of his or her parent. Un 811.09(b). "Parent" is defined as "a person's father, or if he/she has no father, [then as] his/her mother." Un 811.07. Accordingly, in this case the parties do not dispute the fact that the domicile of plaintiff Gary Bisson at the time of Todd's application is controlling on the issue of whether Todd is entitled to the benefit of in-state status for tuition purposes.

The parties do, however, disagree on the question of which of two university rules regarding the determination of domicile, that in effect at the time of Todd's initial application for in-state status in 1983 (the 1982 rule) or the one in effect in 1985 (the 1984 rule) when Todd again requested in-state classification, is applicable in this case. The former rule provided that "[n]o person shall be eligible for in-state tuition unless s/he shall have been domiciled continuously for a period of at least twelve months immediately prior to registration for the term for which in-state status is claimed." Thus, while there existed no time requirement concerning the establishment of domicile itself, in order to receive the benefit of in-state classification, the 1982 rule mandated that one had to be domiciled in New Hampshire for twelve months. In 1984, the rule was changed to read that:

"No person shall be eligible for in-state status unless s/he is domiciled within New Hampshire. For University System purposes, a person does not acquire a domicile in New Hampshire until s/he has been a resident of the state for twelve consecutive months immediately preceding registration for the term for which in-state status is claimed and meets all other requirements for domicile."

Un 811.09(a). In effect, the University, while still requiring proof of domicile in New Hampshire before granting entitlement to the lower in-state tuition rates, changed the definition of the term to include not only the traditional elements of domicile but a twelve-month residency requirement as well.

It is the plaintiffs' position that the 1982 rule should apply to their case because Todd's applications are part and parcel of the same process and because Todd first applied for in-state status in 1983. In the alternative, they argue that Todd himself has met the requirements of the 1984 rule by residing in New Hampshire for twelve consecutive months. The defendants, however, contend that Todd filed two separate and distinct applications, that only the second one, filed in 1985, is at issue in this case, and that the 1984 rule is applica-

ble. Because the plaintiffs failed to plead facts sufficient to establish even the traditional concept of domicile, *see Felker v. Henderson*, 78 N.H. 509, 512, 102 A. 623, 624 (1917) (intention to remain, coupled with actual residence, establishes domicile); *Kerby v. Charlestown*, 78 N.H. 301, 304, 99 A. 835, 836 (1916); *Foss v. Foss*, 58 N.H. 283, 284 (1878) (to acquire domicile, "residence and the intention to make it the home must occur"); *Concord v. Rumney*, 45 N.H. 423, 427 (1864) ("two things are essential—actual residence and an intention to remain indefinitely"), we need not address either the question of which of these two rules applies in this case or the question of whether the plaintiffs' interpretation of the 1984 rule is correct.

As previously mentioned, for University purposes "'[d]omicile' denotes a person's true, fixed and permanent home and *place of habitation*." Un 811.08 (emphasis added). And, as noted by the trial court, the University "has consistently required 'habitation' in the State of New Hampshire along with an intention to remain here before it will confer in-state status to a student." In denying the Bissons' request for in-state classification, the University found that they had not lived in New Hampshire since 1959. We have combed the record of this case as presented to the trial court and have found no evidence to substantiate the plaintiffs' claim that they indeed met the habitation requirement of domicile.

Both parties assured the trial court that the facts of the case were not in dispute. Claiming that certain objective acts on their part were sufficient to establish domicile, the Bissons submitted evidence of the fact that Gary Bisson, *inter alia*, purchased property in Gorham, improved it, paid property taxes and resident taxes, obtained a driver's license, registered to vote, and terminated his voter registration in Virginia. Although they listed a number of actions taken, the plaintiffs never argued to the trial court that Gary Bisson had actually resided in New Hampshire at any time after 1959. In fact, their pleadings spoke only of a future intent to live in the State.

■■ More specifically, the plaintiffs' motion for summary judgment merely asserted that Gary Bisson "personally intends to return to live in New Hampshire after completing his foreign service career." His affidavit in support of the motion for summary judgment only restated Bisson's intent in 1983 "to reestablish legal residence in New Hampshire where [he] planned to live after [his] retirement from the Foreign Service." A stated intention to return to New Hampshire at a vague, relatively uncertain future date, no matter how genuine, does not of itself establish domicile. *See Felker v. Hen-*

derson, 78 N.H. at 512, 102 A. at 624. The plaintiffs' contention that "Gary Bisson frequently returns to the State of New Hampshire to visit family and friends" also does nothing to advance their position. Frequent visits to individuals domiciled in this State do not transform those not living in New Hampshire into New Hampshire domiciliaries.

At the hearing on this matter, in support of their position that Gary Bisson was domiciled in New Hampshire in 1983, the plaintiffs presented the following facts to the trial court. Referring to Mr. Bisson, the plaintiffs argued that he

> "decided to change his domicile to the State of New Hampshire. He purchased a half interest in some real estate which his brother owned up in Gorham. The property had been vacant. He came with his wife, opened up the property, made extensive renovations and repairs to it and handled all the costs for that, has handled the administrative burden of, on that property. It is now rented. It is the place to which when he retires he would in all probability return because that's his boyhood home. He's registered to vote; he's been recognized by the selectmen in the Town of Gorham since 1983 as a legal voter there, and he has voted there in all years since this. His wife pays taxes. His automobiles were purchased, he's registered in the State of New Hampshire, they are insured through here. He holds a New Hampshire driver's license as does his wife."

The plaintiffs went on to assert that "as far as [they could] tell," the only reason the University denied Todd in-state status was that his father had "not lived in New Hampshire for a long enough period of time." They counter by saying that, as a foreign service officer, Gary Bisson "simply cannot live in the state for extended periods of time." What they completely fail to assert, however, is that, following his departure from the State in 1959, plaintiff Gary Bisson ever resided in New Hampshire at all. Since no facts, disputed or otherwise, were presented to the trial court regarding whether Gary Bisson ever established residence in New Hampshire after 1959, there is no need to address the question of whether he lived here long enough to establish domicile.

■ We are cognizant of the fact that, first in their brief to this court and again at oral argument, the plaintiffs alleged that the Bissons had in fact briefly occupied the ancestral home in Gorham in

1983. Because the plaintiffs had an opportunity to raise this before the trial court, yet failed to do so, thus denying that court the opportunity to consider the arguments, it would be improper for us to consider them now. *Miller v. Basbas*, 131 N.H. 332, 338, 553 A.2d 299, 303 (1988); *see Dubois v. Dubois*, 122 N.H. 532, 536, 446 A.2d 1181, 1183 (1982). "It is axiomatic that matters ignored in the trial court may not be raised here." *Perron v. City of Somersworth*, 131 N.H. 303, 305, 553 A.2d 283, 284 (1988); *see Tishkevich v. Tishkevich*, 131 N.H. 404, 407, 553 A.2d 1324, 1327 (1989); *Daboul v. Town of Hampton*, 124 N.H. 307, 309, 471 A.2d 1148, 1149 (1983).

■ Therefore, based on the record before us, we conclude that the trial court was correct in granting the defendants' motion for summary judgment. In light of our determination that the plaintiffs failed to plead facts sufficient to establish domicile in this State, we do not address their other arguments.

*Affirmed.*

HORTON, J., did not sit; the others concurred.