NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Hillsborough-northern judicial district
No. 2018-0706

JOHN O'DONNELL

v.

ALLSTATE INDEMNITY COMPANY

Argued: November 6, 2019
Opinion Issued: May 22, 2020

McDowell & Osburn, P.A., of Manchester (Mark D. Morrissette on the brief and orally), for the plaintiff.

Primmer Piper Eggleston & Cramer PC, of Manchester (Doreen F. Connor on the brief and orally), for the defendant.

BASSETT, J. The plaintiff, John O'Donnell, appeals an order of the Superior Court (Messer, J.) granting summary judgment to the defendant Allstate Indemnity Company. Following a November 2015 motor vehicle accident, O'Donnell filed an underinsured motorist claim under a personal umbrella insurance policy that he had purchased from Allstate. The claim was denied by Allstate. O'Donnell then filed this declaratory judgment action to determine whether his policy provided uninsured motorist coverage. The trial court concluded that O'Donnell's policy did not provide uninsured motorist coverage, finding that a written waiver of uninsured motorist coverage that

O'Donnell had executed in September 2011 remained in effect at the time of the accident. We affirm.

The following facts are drawn from the trial court's order and the record, or are otherwise undisputed. In September 2011, O'Donnell applied for a personal umbrella insurance policy from Allstate. The policy became effective on September 2, 2011, with a coverage period from September 2, 2011 to September 2, 2012. The policy provided O'Donnell with $2,000,000 of coverage.

On September 27, 2011, O'Donnell submitted to Allstate a completed New Hampshire personal umbrella policy uninsured motorist selection/rejection form. The selection/rejection form that O'Donnell signed provided that "[t]he following selection or rejection [of uninsured motorist coverage] will apply now and to all future renewals or continuations of my policy unless I notify you otherwise in writing." O'Donnell checked the following box: "I wish to reject Uninsured Motorists Insurance . . . for my Personal Umbrella Policy."

In July 2012, 2013, and 2014, Allstate sent O'Donnell a "**Renewal Offer**" for his personal umbrella policy. On each occasion, O'Donnell accepted the renewal offer, and Allstate sent O'Donnell "**RENEWAL Personal Umbrella Policy Declarations**" and/or "**AMENDED Personal Umbrella Policy Declarations**." Each renewal was effective for a term of one year beginning on September 2. O'Donnell continued to have the same policy number with substantially the same coverage terms as he had during the original coverage period. The first page of the policy declarations for each coverage period stated: "**Uninsured Motorists Insurance Rejected.**" Each year, Allstate sent O'Donnell a notice reminding him that the company offered uninsured motorist coverage, and inviting him to "contact [his] agent" for more information about his "options concerning this coverage."

In July 2015, Allstate again sent O'Donnell a policy renewal offer. O'Donnell requested that Allstate reduce his coverage limit from $2,000,000 to $1,000,000 for the September 2, 2015 to September 2, 2016 coverage period. Allstate complied with O'Donnell's request, which resulted in a nearly 50 percent decrease in O'Donnell's premium. Allstate sent O'Donnell amended personal umbrella policy declarations for the 2015-16 coverage period, which reflected the reduced coverage limit and premium. The policy declarations stated, in bold font, that O'Donnell had rejected uninsured motorist coverage. At approximately the same time that it sent the 2015-16 policy declarations, Allstate also sent O'Donnell a notice reminding him that the company offered uninsured motorist coverage. It is undisputed that O'Donnell made no written request for uninsured motorist coverage. Moreover, in the affidavit that

2

O'Donnell submitted to the court, he made no assertion that he otherwise requested uninsured motorist coverage.

The new coverage limit became effective on September 2, 2015. O'Donnell continued to have the same policy number, and, other than the reduced coverage limit and premium, the 2015-16 coverage terms were substantially the same as the terms during the previous coverage periods.

The new coverage limit was in effect on November 12, 2015, when O'Donnell was injured in a motor vehicle accident in which the car that he was driving was rear-ended by another motorist. O'Donnell filed a claim for underinsured motorist coverage under his umbrella policy, which Allstate denied.

O'Donnell brought a declaratory judgment action to determine whether the 2015-16 policy provided uninsured motorist coverage. He argued that, because his coverage limit was reduced from $2,000,000 to $1,000,000 as of September 2, 2015, the 2015-16 policy was a new policy to which his 2011 waiver of uninsured motorist coverage did not apply. O'Donnell argued that, because he did not execute a new written waiver of uninsured motorist coverage in conjunction with the 2015-16 policy, Allstate was required by statute to provide him with uninsured motorist coverage.

RSA 264:15, I (Supp. 2019) provides, in relevant part:

[U]mbrella or excess policies that provide excess limits to policies described in RSA 259:61 [motor vehicle liability policies] shall also provide uninsured motorist coverage equal to the limits of liability purchased, unless the named insured rejects such coverage in writing. Rejection of such coverage by a named insured shall constitute a rejection of coverage by all insureds, shall apply to all vehicles then or thereafter eligible to be covered under the policy, and shall remain effective upon policy amendment or renewal, unless the named insured requests such coverage in writing.

Allstate moved for summary judgment, arguing that O'Donnell's September 2011 waiver of uninsured motorist coverage remained in effect at the time of the November 2015 accident because O'Donnell never revoked his waiver by requesting uninsured motorist coverage in writing, as required by statute. See id. The trial court granted Allstate's motion. The court noted that there was no dispute that O'Donnell had rejected uninsured motorist coverage in 2011, and that he had never subsequently requested uninsured motorist coverage in writing. The court found that O'Donnell's 2015-16 policy "was a renewal of his previous umbrella policies, with amended coverage terms," concluding that the reduction of the coverage limit effective September 2015 did not create a new

policy such that O'Donnell's 2011 waiver did not continue to apply.  See id.  This appeal followed.

On appeal, O'Donnell argues that the trial court erred in granting summary judgment because it incorrectly construed RSA 264:15, I.  O'Donnell argues that, because his coverage limit was reduced from $2,000,000 to $1,000,000 at the start of the 2015-16 coverage period, the 2015-16 policy is not an "amendment or renewal" of his original policy, id., but rather a new policy.  Consequently, O'Donnell argues, his September 2011 waiver does not apply to the 2015-16 policy, and Allstate was therefore required to obtain a second written waiver of uninsured motorist coverage before denying him coverage.  See id.

Allstate counters that the decision of the trial court should be affirmed because O'Donnell's 2011 waiver of uninsured motorist coverage remained in effect at the time of the 2015 accident.  Allstate emphasizes that, although O'Donnell made changes to his policy after executing the 2011 waiver, including a reduction of the coverage limit for the 2015-16 period, he never made a written request that Allstate add uninsured motorist coverage to his policy.  Consequently, Allstate argues, O'Donnell "is not entitled to reform his policy after the fact."  We agree with Allstate.

In a civil case, the moving party is entitled to summary judgment if the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  RSA 491:8-a, III (2010).  "We review de novo the trial court's application of the law to the facts in its summary judgment ruling."  Progressive N. Ins. Co. v. Concord Gen. Mut. Ins. Co., 151 N.H. 649, 652 (2005).  "[W]e consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party."  Lacasse v. Spaulding Youth Ctr., 154 N.H. 246, 248 (2006) (quotation omitted).  "If our review of the evidence does not reveal a genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm the trial court's decision."  Amica Mut. Ins. Co. v. Mutrie, 167 N.H. 108, 111 (2014) (quotation omitted).

O'Donnell first argues that genuine issues of material fact preclude the trial court's grant of summary judgment.  He asserts that "[t]he genuine issues of material fact relate to whether the changes in the personal umbrella policy rendered the new insurance contract (beginning on September 2, 2015) a new policy or whether it was simply a 'renewal policy' or an 'amendment' to a prior policy."  Although O'Donnell characterizes this as an issue of fact, the question of whether the 2015-16 policy is an "amendment or renewal" of his prior policies, RSA 264:15, I, presents an issue of statutory interpretation, and therefore is a question of law.  See Petition of Carrier, 165 N.H. 719, 721 (2013)

(stating that statutory interpretation presents a question of law which we review de novo). O'Donnell does not identify any disputed issues of material fact,[1] and instead presents a series of arguments as to why the trial court erred in applying RSA 264:15, I, to the undisputed facts. Therefore, we conclude that there are no genuine issues of material fact that would preclude the trial court's grant of summary judgment.

O'Donnell next argues that the trial court erred because it did not properly interpret the words "amendment or renewal" in RSA 264:15, I. Specifically, he argues that the trial court "ignored the plain and ordinary meaning of the terms amendment or renewal," when it ruled that his 2015-16 policy "was a renewal of his previous umbrella policies, with amended coverage terms." (Quotations omitted.)

Resolution of the question of whether the amendment of coverage terms in the 2015-16 policy created a new policy, or, rather, constituted an "amendment or renewal" of O'Donnell's original policy, requires that we engage in statutory interpretation. "We review the trial court's statutory interpretation de novo." Franciosa v. Hidden Pond Farm, 171 N.H. 350, 355 (2018). "In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole." Carrier, 165 N.H. at 721. "We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning." Id. "We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include." Id. "The legislature is not presumed to waste words or enact redundant provisions and whenever possible, every word of a statute should be given effect." Garand v. Town of Exeter, 159 N.H. 136, 141 (2009) (quotation omitted). "We construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result." Carrier, 165 N.H. at 721. "Moreover, we do not consider words and phrases in isolation, but rather within the context of the statute as a whole." Id. "This enables us to better discern the legislature's intent and to interpret statutory language in light of the policy or purpose sought to be advanced by the statutory scheme." Id.

A central premise of O'Donnell's statutory construction argument is that the terms "amendment" and "renewal" are mutually exclusive. O'Donnell argues that a waiver of uninsured motorist coverage can "apply to an

---

[1] In his reply brief, O'Donnell suggests, for the first time, that he may have requested that uninsured motorist coverage be added to his policy when he requested that his coverage limit be reduced from $2,000,000 to $1,000,000. O'Donnell has not demonstrated that he raised this argument in the trial court. "It is axiomatic that matters ignored in the trial court may not be raised here." Bisson v. University of New Hampshire, 133 N.H. 353, 360 (1990). Therefore, the argument is waived. See id.

amendment or renewal, not to renewals with amendments." (Quotations omitted.) O'Donnell also contends that, because the $1,000,000 reduction of the coverage limit took effect at the beginning of a new coverage period, the decrease in coverage cannot be considered to be an "amendment" to his umbrella policy. He contends that, although a change to a policy taking effect during one of the one-year coverage periods would be an "amendment," "when there is an amendment or a change to a contract for a set period of time with an expiration set on a definitive date, the amendment cannot happen after the policy has expired. One cannot amend what does not exist." We disagree.

First, a "change in policy limits does not preclude a finding that [a] new policy is a renewal policy," particularly when the parties have manifested an intent for the new policy to be a renewal, and there is no lapse in coverage. 2 Steven Plitt et al., Couch on Insurance 3d § 29:35 (rev. 2010). Here, Allstate sent O'Donnell a policy "**Renewal Offer**" and "**AMENDED Personal Umbrella Policy Declarations**" for the 2015-16 coverage period, just as it had done in connection with his prior renewals. The policy issued to O'Donnell continued to have the same number as it had had since 2011. Moreover, other than the lower coverage limit and reduced premium, the 2015-16 terms were substantially the same as the terms of the previous coverage periods. Also, there was no lapse in O'Donnell's coverage. Given this record, the trial court did not err when it characterized the 2015-16 policy as a "renewal . . . with amended coverage terms." See RSA 264:15, I.

Moreover, O'Donnell's proffered construction of RSA 264:15, I, makes an arbitrary distinction between policy changes occurring at renewal and those occurring during a coverage period. Under O'Donnell's construction, had the $1,000,000 reduction of coverage taken effect one day later, on September 3, rather than September 2, the change would be an "amendment" to the 2015-16 policy, and the 2011 waiver would remain in effect. Likewise, if the reduction had instead taken effect one day before the new policy term began, September 1, 2015, the change would be an "amendment" to the 2014-15 policy, and the 2011 waiver would remain in effect. Thus, under O'Donnell's construction, as long as a change did not occur contemporaneously with the start of a new coverage period, a prior written waiver of uninsured motorist coverage would remain in effect notwithstanding a significant change to the terms of an umbrella policy. We are unconvinced.

Taken as a whole, RSA 264:15, I, establishes that a written waiver of uninsured motorist coverage "shall remain effective" notwithstanding significant changes to the terms of an umbrella policy, such as changes in the vehicles eligible to be covered, and irrespective of policy amendment or renewal. RSA 264:15, I. What is determinative is not whether the terms of an umbrella policy change, or when the changes occur, but simply whether the policy holder has rejected uninsured motorist coverage in writing. The statute's plain

language does not suggest that policy changes taking effect at the start of a new coverage period are to be treated differently, such that an otherwise enforceable waiver of uninsured motorist coverage becomes unenforceable merely because a change happens to take effect at renewal. The fact that O'Donnell's coverage limit and premium were reduced, and that these changes took effect at the start of a new coverage period, in no way invalidates O'Donnell's initial written rejection of uninsured motorist coverage.

O'Donnell's other arguments are also unavailing. He contends that the 2015-16 policy cannot be a "renewal" of his umbrella policy because a "renewal" requires that a succeeding policy have coverage limits that are at least equal to the limits under the preceding policy. O'Donnell urges us to look to RSA 417-A:1, II, which, in relevant part, defines a "renewal" as "the issuance and delivery by an insurer of a policy superseding at the end of the policy period a policy previously issued and delivered by the same insurer, such renewal policy to provide types and limits of coverage at least equal to those contained in the policy being superseded." RSA 417-A:1, II (2015) (emphasis added). However, as the trial court correctly noted, the definition in RSA 417-A:1, II applies only to automobile insurance policies. See RSA 417-A:2 (2015) (providing that RSA chapter 417-A "shall apply to that portion of policies of automobile insurance providing bodily injury and property damage liability, comprehensive, and collision coverages") (emphasis added)). The legislature could have applied the same definition of "renewal" to umbrella policies, but it chose not to do so, and we will not add language to RSA 264:15, I, that the legislature did not see fit to include. See Carrier, 165 N.H. at 721. Similarly, we are not persuaded by O'Donnell's argument that we should look to a New Hampshire Insurance Department regulation defining the term "renewal," see N.H. Admin. R., Ins 1402.02(p), as that definition also applies only to primary automobile policies, not umbrella policies. See N.H. Admin. R., Ins 1401.02, 1402.02(a).

O'Donnell next argues that RSA 264:15, I, must be "construed liberally for the benefit of the innocent persons contemplated by the statute," namely, those injured by uninsured motorists. Although we have stated that "[u]ninsured motorist statutes are designed to provide an innocent victim a source of restitution when that injured party cannot recover the full amount of damages from the tortfeasor," Swain v. Employers Mut. Cas. Co., 150 N.H. 574, 576 (2004) (quotation omitted), and that "[s]uch statutes have been liberally construed to accomplish their legislative purpose," Rivera v. Liberty Mut. Fire Ins. Co., 163 N.H. 603, 607 (2012), "[w]e are not at liberty to find uninsured motorist coverage when it is not required by the statute." Id. Here, not only is uninsured motorist coverage not required by statute, a finding that O'Donnell's 2015-16 policy includes uninsured motorist coverage would be at odds with the plain language of the statute. See RSA 264:15, I.

O'Donnell also argues that, because the reduction in coverage was a sufficiently material policy change, the 2015-16 policy is not a "renewal." Relying on cases from other jurisdictions, O'Donnell urges us to adopt a materiality test to determine whether a policy change is significant enough to make the policy a new policy, rather than a renewal. See, e.g., Torgerson v. State Farm Mut. Auto. Ins. Co., 957 P.2d 1283, 1286-87 (Wash. Ct. App. 1998); Duckett-Murray v. Encompass Ins. Co. of Am., 178 A.3d 527, 540 (Md. Ct. Spec. App. 2018). However, because the cited cases involve the interpretation of statutes that employ very different language than is used in RSA 264:15, I, we find them to have little relevance to our analysis.

Finally, O'Donnell argues that the legislative history of RSA 264:15, I, supports his construction of the statute. Because the language of RSA 264:15, I, is plain and unambiguous, we need not look for further indication of legislative intent. See Town of Rye Bd. of Selectmen v. Town of Rye Zoning Bd. of Adjustment, 155 N.H. 622, 624 (2007). We observe, however, that even if we were to find that the language in RSA 264:15, I, is ambiguous, the legislative history supports our interpretation.

In 1991, the legislature amended RSA 264:15, I, to require that umbrella policies provide uninsured motorist coverage equal to liability coverage, unless the umbrella policy holder rejected such coverage. See Laws 1991, 330:2; Santos v. Metro. Prop. & Cas. Ins. Co., 171 N.H. 682, 690-91 (2019) (explaining our decision in United Services Automobile Assoc. v. Wilkinson, 132 N.H. 439 (1989), and recounting subsequent amendments to RSA 264:15, I, superseding that decision). In 2007, the legislature again amended the statute, making two substantive changes: first, it added the requirement that an umbrella policy holder's rejection of uninsured motorist coverage be in writing; second, it added the last sentence of the statute, including the language at issue in this case. See Laws 2007, 302:1.

As originally introduced, the 2007 amendment would have added only the requirement that the rejection of uninsured motorist coverage be in writing. See Senate Bill 38 available at http://gencourt.state.nh.us/SofS_Archives/2007/senate/SB38S.pdf (last visited May 21, 2020). However, at a hearing regarding the proposed legislation, a representative for the American Insurance Association and the New Hampshire Association of Domestic Insurance Companies urged that the bill also provide that a written rejection of coverage by a named insured apply to all insureds, apply to renewals of the policy and to changes in automobiles, and "apply until withdraw[n] in writing." Id. The language proposed by the insurance industry representative became the last sentence of RSA 264:15, I. See Senate Bill 38 available at http://gencourt.state.nh.us/SofS_Archives/2007/house/SB38H.pdf (last visited May 21, 2020); RSA 264:15, I.

In sum, we agree with the trial court that, notwithstanding the September 2015 reduction of coverage, the 2015-16 policy is a renewal of O'Donnell's umbrella policy.  See RSA 264:15, I.  Because the 2015-16 policy is a renewal, and O'Donnell never revoked his September 2011 waiver of uninsured motorist coverage by requesting uninsured motorist coverage in writing, O'Donnell's September 2011 waiver remained in effect at the time of the November 2015 accident.

Affirmed.

HICKS, HANTZ MARCONI, and DONOVAN, JJ., concurred.